OPINION *Page 2 
{¶ 1} This matter is before this Court on the cross-appeal of Scott Wayland as the initial appeal of Susannah M. Wayland did not proceed beyond her notice of appeal.
 {¶ 2} Also, we have no responsive brief of Susannah M. Wayland to that of Cross-Appellant, Scott Wayland.
 STATEMENT OF THE FACTS AND CASE {¶ 3} Scott and Susannah Wayland were married on July 22, 1989, with two children resulting from the union.
 {¶ 4} During the marriage, Scott Wayland (Scott) held various executive positions with different corporations. The final position prior to the divorce, except for a personal venture, was with MacTools. Such corporation converted from an employee based organization into a franchising structured business, thereby eliminating Scott's position.
 {¶ 5} Thereafter, Scott became involved with Providence Acquisitions, LLC and the Eagle's Nest Ranch (Eagle).
 {¶ 6} The latter was a charitable entity for troubled children.
 {¶ 7} Scott became president of Eagle which owned real estate but was insufficient in actual cash. As a result, Scott was receiving no salary from Eagle.
 {¶ 8} Scott holds a Bachelor of Arts degree and a master's degree with additional graduate studies.
 {¶ 9} Susannah Wayland's (Susannah) education qualified her to teach in Michigan, but she was not certified in Ohio. She was also employed by Eagle without pay and held a receptionist's position for a time prior to the decree of divorce. *Page 3 
 {¶ 10} During the marriage, the parties acquired substantial assets.
 {¶ 11} This appeal arises from the magistrate's decision, as approved, relative to division of assets, determination of income levels, spousal and child support and other rulings.
 {¶ 12} There are six Assignments of Error in this cross appeal.
 ASSIGNMENTS OF ERROR {¶ 13} "I. THE COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION IN FAILING TO INDEPENDENTLY REVIEW AND DISCUSS THE OBJECTIONS TO THE MAGISTRATE'S DECISION FILED BY THE CROSS-APPELLANT/HUSBAND AND THE CROSS-APPELLEE/WIFE AND IN FAILING TO RULE SPECIFICALLY ON THE CROSS-APPELLANT/HUSBAND'S OBJECTIONS TO THE MAGISTRATE'S DECISION.
 {¶ 14} "II. THE COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION BY FAILING TO DIVIDE THE PARTIES' ASSETS AND LIABILITIES IN AN EQUITABLE FASHION.
 {¶ 15} "III. THE COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION IN IT'S [SIC] DETERMINATION OF THE LEVEL OF INCOME THAT THE CROSS-APPELLANT/HUSBAND AND CROSS-APPELLEE/WIFE SHOULD BE FOUND TO MAKE.
 {¶ 16} "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION BY ESTABLISHING *Page 5 
SPOUSAL SUPPORT WITHOUT FIRST CONSIDERING ALL THE FACTORS AS SET FORTH IN 3105.18 AND 3105.171 AND, IN PARTICULAR, THE NEED OF THE COURT TO CONSIDER THE PARTIES' POSITION AFTER THE DIVISION OF ASSETS BEFORE CONSIDERING THE ISSUE OF THE PROPERTY OF SPOUSAL SUPPORT.
 {¶ 17} "V. THE COURT ERRED TO THE PREJUDICE OF CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION TO THE EXTENT THAT THE COURT ATTEMPTED TO AWARD THIRD PARTY PROPERTY TO THE CROSS-APPELLANT/WIFE.
 {¶ 18} "VI. THE COURT ERRED TO THE PREJUDICE OF THE CROSS-APPELLANT/HUSBAND AND ABUSED ITS DISCRETION IN FAILING TO FOLLOW VARIOUS FINPLAN AND OTHER TAX PROJECTIONS AND COMPUTATIONS TO ARRIVE AT JUST SPOUSAL SUPPORT AND CHILD SUPPORT ORDERS MADE IN THIS CASE."
 {¶ 19} Each of the Assignments of Error asserts an abuse of discretion by the Court.
 {¶ 20} In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably. *Page 6 
 I. {¶ 21} The First Assignment of this cross-appeal references the objections made by each party to the magistrate's decision.
 {¶ 22} Since Susannah has not pursued her appeal, we are not concerned with her objections.
 {¶ 23} Civil Rule 53 provides in part:
 {¶ 24} "(b) Action on magistrate's decision. Whether or not objections are timely filed, a court may adopt or reject a magistrate's decision in whole or in part, with or without modification. A court may hear a previously-referred matter, take additional evidence, or return a matter to a magistrate.
 {¶ 25} "* * *
 {¶ 26} "(d) Action on objections. If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.
 {¶ 27} "(e) Entry of judgment or interim order by court. A court that adopts, rejects, or modifies a magistrate's decision shall also enter a judgment or interim order.
 {¶ 28} This Court has also ruled in Dorton v. Dorton (June 15, 2001), Ohio App. 5 Dist. Delaware App. No. 00CAF10029. *Page 7 
 {¶ 29} "Pursuant to Rule 53(E)(4)(b) of the Ohio Rules of Civil Procedure, the trial `court may adopt, reject or modify the magistrate's decision . . .' In Addition, this Court has previously ruled that a trial court is to make an independent analysis of the Magistrate Decision. (See Rhoads v. Arthur (June 30, 1999), Delaware App. No. 98CAF10050, unreported)."
 {¶ 30} The cross objections of Scott to the magistrate's decision were:
 {¶ 31} "The `income' used to set Child Support and Spousal Support is too high. The earning ability that was found to be too high. Husband lost his job in February of 2002. Wife did not have a husband who earned $75,000.00 while most recently married and should not profit by the divorce. Earning ability should be set at the amount that it actually was prior to separation. To the extent that $75,000.00 is found as a proper number for use in setting child support and spousal support, as suggested in paragraph #13.15 on pages 17 through 24 and in paragraph #4 on page 31 the Husband objects.
 {¶ 32} "To the extent that in paragraph #7 on page 32 relating to the Sale of Marital residence that Husband is required to pay 100% of any loss from sale and Husband objects to the same. Further, and additionally, since the evidence established that Husband was on his third home at the time of marriage and the equity was brought into the marriage by him he also objects for that not being found to be separate property.
 {¶ 33} "Husband objects to paragraphs #9, 10, 15 on pages 33 and 34 to the extent that the Court is attempting to award third party property. It is respectfully submitted that while the Husband does not object to the division of items as between the Wife and Husband since these are third party property he must object to the same. *Page 7 
 {¶ 34} "Husband object to paragraph #11 on page 33 in that he would like to remove his personal property including family heirlooms (small table, hall tree, antique radio, rocking chair, Gorham silver/crystal), tools and tool box, and contents of his office including his work towards my doctoral degree, business documents, books.
 {¶ 35} "Husband objects to paragraph #14 on page 34 relating to the Stanley AVP plan value in that it is incorrectly stated as $67,000. The actual value is $90,000. Further, to the extent that there is any negative equity in the sale of the residence assets awarded to Wife should be restrained and used to pay off half of the home negative equity at time of the sale of the marital residence in the same way that the Court did that with assets awarded to the Husband.
 {¶ 36} "Husband objects to paragraph #19 on page 36 relating to Spousal support. The `income' used to set Child Support and Spousal Support is too high. The earning ability that was found is too high. Husband lost his job in February of 2002. Husband did not earn $75,000.00 when the parties were living together immediately before she filed for divorce and Wife should not profit by the divorce. Earning ability should be set at the amount that it actually was prior to separation."
 {¶ 37} The substantial differences in the judge's review with the magistrate's opinion, as acknowledged by Cross-Appellant indicate that the trial court has sufficiently addressed the objections by an indication of an independent analysis as required by Dorton v.Dorton, supra, and Civ. R. 53.
 {¶ 38} Appellant's First Assignment of Error is therefore overruled. *Page 8 
 II {¶ 39} The Second Assignment questions the trials court's division of assets and liabilities.
 {¶ 40} The applicable statute is R.C. § 3105.171(F):
 {¶ 41} "In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 42} "(1) The duration of the marriage;
 {¶ 43} "(2) The assets and liabilities of the spouses;
 {¶ 44} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 45} "(4) The liquidity of the property to be distributed;
 {¶ 46} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 47} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 48} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 49} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 50} "(9) Any other factor that the court expressly finds to be relevant and equitable." *Page 9 
 {¶ 51} A review of a trial court's division of marital property is governed by an abuse of discretion standard. Martin v. Martin (1985),18 Ohio St.3d 292. We cannot substitute our judgment for that of the trial court unless, when considering the totality of the circumstances, the trial court abused its discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128.
 {¶ 52} The trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division.Briganti v. Briganti (1984), 9 Ohio St.3d 220.
 {¶ 53} Revised Code § 3105.18 provides:
 {¶ 54} "(A) As used in this section, "spousal support" means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. "Spousal support" does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution of property or a distributive award under section 3105.171 of the Revised Code.
 {¶ 55} "(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. During the pendency of any divorce, or legal separation proceeding, the court may award reasonable temporary spousal support to either party. *Page 10 
 {¶ 56} "An award of spousal support may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, from future income or otherwise, as the court considers equitable.
 {¶ 57} "Any award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise.
 {¶ 58} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 59} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
 {¶ 60} "(b) The relative earning abilities of the parties;
 {¶ 61} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 62} "(d) The retirement benefits of the parties;
 {¶ 63} "(e) The duration of the marriage;
 {¶ 64} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 65} "(g) The standard of living of the parties established during the marriage;
 {¶ 66} "(h) The relative extent of education of the parties; *Page 11 
 {¶ 67} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 68} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 69} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 70} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 71} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 {¶ 72} "(n) Any other factor that the court expressly finds to be relevant and equitable.
 {¶ 73} "(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.
 {¶ 74} "(D) In an action brought solely for an order for legal separation under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party.
 {¶ 75} "(E) If a continuing order for periodic payments of money as alimony is entered in a divorce or dissolution of marriage action that is determined on or after *Page 12 
May 2, 1986, and before January 1, 1991, or if a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the alimony or spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 76} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
 {¶ 77} "(2) In the case of a dissolution of marriage, the separation agreement that is approved by the court and incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.
 {¶ 78} "(F) For purposes of divisions (D) and (E) of this section, a change in the circumstances of a party includes, but is not limited to, any increase or involuntary decrease in the party's wages, salary, bonuses, living expenses, or medical expenses.
 {¶ 79} "(G) If any person required to pay alimony under an order made or modified by a court on or after December 1, 1986, and before January 1, 1991, or any person required to pay spousal support under an order made or modified by a court on or after January 1, 1991, is found in contempt of court for failure to make alimony or spousal support payments under the order, the court that makes the finding, in addition to any other penalty or remedy imposed, shall assess all court costs arising out of the *Page 13 
contempt proceeding against the person and shall require the person to pay any reasonable attorney's fees of any adverse party, as determined by the court, that arose in relation to the act of contempt."
 {¶ 80} The magistrate's decision extensively reviewed the extremely complicated assets, financial obligations and potential earnings of each of the parties over a 38-page recommendation but contained several alternative scenarios.
 {¶ 81} The trial court again reviewed the values and transactions extensively in the Decree with the expressed intent at arriving at an equitable division of debts and assets.
 {¶ 82} The division of marital property and debts in this case was not equal but, according to the trial court, was equitable. R.C. §3105.171(G) provides, in part, that the court shall make written findings of fact that support the determination that the marital property has been equitably divided. What is missing in the trial court's entry is an explanation as to why the unequal division of debts is equitable.
 {¶ 83} The Second Assignment is therefore sustained.
 III, VI {¶ 84} The Third and Sixth Assignments concerns the determination of the potential earning ability of each of the parties and the resulting spousal and child support. Neither was employed at the time of the Decree.
 {¶ 85} This was an area in which the magistrate considered several possibilities. Guidance was provided with the testimony of Mr. Oestreich. Cross-Appellant's range of income was from $75,000 to $150,000. *Page 14 
 {¶ 86} The wife's potential earnings were $20,000 with a possibility of $35,000 if she became licensed as a teacher in Ohio.
 {¶ 87} The trial court was required to order both spousal and child support predicated upon this testimony. Obviously, with no present earnings, the past employment history was of importance.
 {¶ 88} We find no abuse of discretion in the court's order as to such respective support obligations predicated upon the earnings projections provided in the evidence.
 {¶ 89} Thus, the Third and Sixth Assignment are denied.
 {¶ 90} We find that it is premature to decide the Fourth Assignment of error until the trial court has responded to the remand of the First Assignment of Error.
 V. {¶ 91} The Fifth Assignment concerns an assertion of the award of a third party's property.
 {¶ 92} It is clear that the inter-relationship of the assets and debts of Eagles Nest Ranch were required to be considered by the magistrate and the court.
 {¶ 93} The assertion by Cross-Appellant that catastrophic problems will result to Eagle's Next Ranch, which is in a negative cash flow, is unsupported by any factual or legal arguments.
 {¶ 94} We find the Fifth Assignment to be without merit and is denied. *Page 14 
 {¶ 95} The judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed in part, reversed in part and remanded.
Boggins, J., Edwards, J., concurs in part, Hoffman, P.J., concurs in part and dissents in part.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed in part, reversed in part and remanded. Costs assessed to Cross-Appellant.